## Appeal of Rash et al.

Before Hoban, P. J., and Robinson, J.

*Ralph G. Mastriani*, for appellants.

*Needle, Needle & Needle*, for Dickson City Borough.

ROBINSON, J., April 10, 1950.—The above cases are before us on appeals from the orders of the Civil Service Commission of the Borough of Dickson City. The three petitioners were removed from their positions as police officers of the borough by the commission.

On December 31, 1949, petitioners were suspended by the Burgess of Dickson City. Petitioners were notified of the reasons for the suspension which were filed with the borough council. On January 2, 1950, the council, by motion duly seconded and passed, removed petitioners from their positions as borough police officers. Petitioners, in turn, demanded hearings before the civil service commission. Written charges were then filed with the commission and furnished to petitioners, and on January 10, 1950, after hearing, at which petitioners were represented by counsel, the commission sustained the action of the borough council and removed petitioners.

The procedure was in accord with that outlined by Judge Sohn in Goehring's Appeal, 57 D. & C. 256. While the proceeding in that case was brought under the Police Civil Service Act of 1941, the provisions of which have been repealed by the General Borough Law of 1947 insofar as they apply to boroughs, the pertinent provisions have been enacted verbatim in The Borough Code of July 10, 1947, P. L. 1621, sec. 39, 53 PS §§13300.20 and 13300.21. No complaint is made concerning the procedure.

Petitioners have appealed to this court under section 1185 of the Act of 1947, P. L. 1621, 53 PS §13300.21. The record of the proceedings before the commission was submitted and no additional proof was presented by the parties. We are required by the appeal section to determine the matter "as the court deems proper".

Section 1184 of the Act of 1947, 53 PS §13300.20 provides:

"No person employed in any police . . . force of any borough shall be suspended, removed or reduced in rank, except for the following reasons: . . . (4) . . . conduct unbecoming an officer."

It further provides that: "A person so employed shall not be removed for religious, racial or political reasons." The civil service commission based its action on this section in removing petitioners and it is the legislation involved in this appeal.

Petitioners charge "that the findings of the civil service commission" are unwarranted under the evidence and that the order is "improper and illegal, capricious, arbitrary and without foundation in law or fact".

We have reviewed the record with care. It reveals that petitioners comprised the regular police force of the borough. There were six other extra or part-time officers without regular status. Petitioner Rash was

chief of police, Palovitz was captain, and Pabis, regular patrolman.

In the spring of 1949 petitioner Rash, as the chief of police, requested and received permission to promote a police ball for the benefit of the department. Petitioners fixed June 21, 1949, as the date for the event and procured tickets to be printed. Palovitz and Pabis sold tickets, and Rash solicited advertising for the program of events. Together they sold tickets and procured advertising, collecting therefor moneys amounting to $723. This was done in the name of the "Dickson City Police Department", and the sponsorship of the affair was so indicated on the printed tickets. The ball was never held. Petitioners published advertisements canceling the event. Rash, as the chief of the department, received $723 from the sale of tickets by Palovitz and Pabis and his solicitation of advertising, of which sum $173 was deposited in a bank in the names of three petitioners, and the balance Rash kept "at home".

Petitioners made no attempt to fulfill the obligations of the undertaking, or to return the money to the persons from whom it was collected. On the day following their suspension petitioners advertised in the public press that the tickets would be honored in 1950.

Petitioners stated that the moneys were not refunded because no one asked to have it back. The record is barren of a single act on the part of petitioners indicating good faith, on their part, in respect to the moneys collected for the social event they had undertaken to promote.

The net effect of the situation was to deprive those members of the general public, who purchased tickets and advertising, of their money. The record reveals the participation of petitioners as police officers in a low form of dodge or trick while acting under the declared "sponsorship" of the borough police department.

Petitioners kept records by which a good portion of the moneys could have been returned to those from whom it was collected, yet they did nothing to comply with the requirements of an ordinary sense of honesty. Their conduct amounted to that which in certain parlance is termed a racket. See Merriam-Webster, New International Dictionary (2nd ed.).

We hold their actions to constitute conduct unbecoming an officer of the law within the meaning of the language of the statute.

We dismiss petitioners' contention that the underlying reason for their dismissal was a loss in favor with the controlling political organization. While under the statute a policeman may not be removed for political reasons this cannot serve as a defense to a flagrant act of misconduct unbecoming an officer.

Now, April 10, 1950, the orders of the Civil Service Commission of the Borough of Dickson City are sustained and the appeals dismissed.